MRS. META L. HUGHES, ADMINISTRATRIX OF THE ESTATE OF DARRELL C. HUGHES, v. L. C. THAYER.

(Filed 4 February, 1949.)

**1. Trial § 22a—**

On motion to nonsuit, plaintiff's evidence will be taken as true and the plaintiff given the benefit of every fair inference which can be reasonably drawn therefrom in his favor.

**2. Automobiles § 12f—**

A motorist is under duty to exercise due care to avoid injuring children whom he may see, or by the exercise of reasonable care should see, on or

near the highway, taking into account the fact that a child of tender years may attempt to cross in front of an approaching automobile unmindful of impending danger.

**3. Automobiles § 18h (2), 18h (3): Negligence § 12—Evidence held for jury on issues of negligence and contributory negligence in this action to recover for fatal injury of child on highway.**

The evidence tended to show that a school bus and two following cars stopped on the right side of the highway, that two children alighted, one of whom ran immediately in front of the bus across the highway, and the other, a boy eight years old, waited until the three vehicles were in motion and crossed the highway after the third vehicle had passed, and was struck by defendant's truck operated by defendant's agent which was traveling in the opposite direction about thirty miles per hour, and which failed to give any warning of its approach and failed to reduce speed prior to the collision. *Held:* Although the evidence fails to show a violation of the letter of G.S. 20-217, since the school bus was in motion and its stop signal had been withdrawn prior to the impact, the evidence is sufficient to be submitted to the jury upon the issues of the negligence of the driver of the truck and the contributory negligence of the child.

APPEAL by defendant from *Bobbitt, J.,* and a jury, at the August Term, 1948, of the High Point Division of the Superior Court of GUILFORD.

The plaintiff, Mrs. Meta L. Hughes, administratrix, sued the defendant, L. C. Thayer, under G.S. 28-173, for damages for the death of her intestate, Darrell C. Hughes, upon a complaint alleging that such death was proximately caused by the negligence of the defendant's employee, Lloyd Vinson Pearce, while operating the defendant's motor truck in behalf of the defendant. The defendant conceded his ownership of the truck and the agency of Pearce for him. He also admitted that the plaintiff's intestate met death as a result of a collision between himself and the truck while the truck was being driven by Pearce "in and about the business of the said defendant and within the scope and authority of the said Lloyd Vinson Pearce as the agent and employee of the defendant." The defendant denied, however, that the plaintiff's intestate had suffered death on account of negligence on the part of Pearce, and pleaded contributory negligence on the part of the deceasd as an affirmative defense.

The defendant offered no evidence. When viewed in the light most favorable to her, the plaintiff's testimony presented the tragedy set forth below.

On the early afternoon of 14 November, 1947, Darrell C. Hughes, a small boy eight years of age, was returning to his home after a day in school. He was traveling with other school children on a school bus which was proceeding northward along a public road known as Centennial Avenue Extension near the city limit of High Point. After displaying its regulation "Stop Signal" to notify approaching motorists that it was stopping to discharge passengers, the school bus came to a standstill facing

in a northerly direction on the east half of the paved portion of the road approximately opposite the home of the plaintiff's intestate located on the west side of the road. The drivers of two automobiles following in the track of the school bus thereupon brought their vehicles to full stops on the road to the rear of the bus. At this point, Centennial Avenue Extension runs north and south, consists of a paved roadway twenty-one feet in width with dirt shoulders six feet wide on each side, and extends a distance of more than nine hundred feet to the north in a straight line.

After the school bus had stopped, the plaintiff's intestate and another schoolboy of approximately the same age descended from the right-hand front side of the bus to the dirt shoulder east of the paved roadway. The other boy immediately passed in front of the stationary bus to the west side of the road, but the plaintiff's intestate waited until the "Stop Signal" of the bus had been withdrawn and the bus and the two automobiles behind it had begun to move northward.

As the second trailing automobile cleared the roadway before him, plaintiff's intestate undertook to walk directly across the road towards his home "with his hands in his pockets," when he was struck by the front part of the southbound truck of the defendant and knocked to the pavement, suffering practically instantaneous death. The collision occurred "in the middle of the highway," and the truck proceeded at least one hundred and twelve feet beyond the place of impact before stopping. Prior to the accident, the driver of the truck traveled southward along Centennial Avenue Extension, which was straight for at least nine hundred feet. As he approached "the school bus and those two cars that stopped behind it," there was "no obstruction or anything to prevent" him from observing the character and function of the bus, and the other attending conditions. He was driving at a speed estimated by witnesses at thirty miles per hour, and failed to give any warning of the approach of the truck by horn or other signal, and failed to reduce the speed of the truck prior to the collision.

Issues of negligence, contributory negligence, and damages were answered by the jury in favor of the plaintiff; the court rendered judgment thereon for the plaintiff and against the defendant; and the defendant appealed, assigning as errors the refusal of his motion for involuntary judgment of nonsuit and excerpts from the charge.

*York, Dickson & Morgan for plaintiff, appellee.*
*Gold, McAnally & Gold for defendant, appellant.*

Ervin, J. The defendant puts his chief emphasis on this appeal on his exception to the refusal of his motion for judgment of involuntary nonsuit under G.S. 1-183. He asserts the motion ought to have been

allowed either on the ground that there was no sufficient evidence of actionable negligence on the part of the driver of his truck, or on the ground that the plaintiff's intestate was guilty of contributory negligence as a matter of law.

In passing upon a motion for a compulsory nonsuit under the statute, the court must assume the evidence in behalf of the plaintiff to be true and must extend to the plaintiff the benefit of every fair inference which can be reasonably drawn therefrom by the jury in favor of the plaintiff. *Swink v. Horn,* 226 N. C. 713, 40 S. E. (2) 353; *Buckner v. Wheeldon,* 225 N. C. 62, 33 S. E. (2) 480; *Atkins v. Transportation Co.,* 224 N. C. 688, 32 S. E. (2) 209. We must measure the evidence by this criterion.

The law imposes upon a motorist the duty to exercise due care to avoid injuring children whom he may see, or by the exertion of reasonable care should see, on or near the highway. *Sparks v. Willis,* 228 N. C. 25, 44 S. E. (2) 343; *Moore v. Powell,* 205 N. C. 636, 172 S. E. 327; *Goss v. Williams,* 196 N. C. 213, 145 S. E. 169; *S. v. Gray,* 180 N. C. 697, 104 S. E. 647. In so doing, he must recognize that children have less discretion and capacity to shun danger than adults, and are entitled to a care proportionate to their inability to foresee and avoid peril. *Yokeley v. Kearns,* 223 N. C. 196, 25 S. E. (2) 602. Due care may require a motorist in a particular situation to anticipate that a child of tender years, whom he sees on or near the highway, will attempt to cross in front of his approaching automobile unmindful of the attendant danger. *Fox v. Barlow,* 206 N. C. 66, 173 S. E. 43.

The "Stop Signal" of the bus involved here had been withdrawn, and the bus itself had been put in motion just before the defendant's truck met the bus. In consequence, the testimony did not support a conclusion that the driver of the truck had violated the letter of the statute embodied in G.S. 20-217, which was enacted by the Legislature for the manifest purpose of saving children boarding or alighting from school busses from injury or death at the hands of approaching motorists.

But the evidence tends to show that the tragedy happened on the afternoon of a school day, and that the driver of the defendant's truck approached the scene before the school bus was put into motion and in time to see it standing on the highway with its stop sign fully displayed. This constituted a danger signal, and was sufficient to give the driver of the truck notice that in all probability children were alighting from the bus and would be on or near the highway as he passed, and placed him under the legal duty of proceeding in such a manner and at such a speed as were reasonably calculated to enable him to avoid striking any child who might attempt to cross the highway.

Hence, the jury might reasonably have drawn these inferences from the evidence, namely: (1) That the driver of the defendant's approaching

truck saw, or by the exercise of due care should have seen, the plaintiff's intestate, a small boy of tender years, alight from the school bus and take a position on the dirt shoulder east of the paved portion of the road; (2) that the driver of the truck anticipated, or by the exercise of reasonable care should have anticipated, that the plaintiff's intestate would undertake to cross to the west side of the road the instant the school bus and the automobiles following in its track cleared the pavement before him oblivious of the peril of the defendant's approaching truck; (3) that notwithstanding such knowledge or means of knowledge, the driver of the defendant's truck met and passed the school bus and the trailing automobiles in a negligent manner in that he drove the truck at a speed greater than was reasonable and prudent under the conditions then existing, or in that he failed to keep a proper lookout, or in that he failed to have the truck under reasonable control, or in that he failed to give the intestate warning of the approach of the truck by sounding his horn when due care under the existing circumstances required such warning; and (4) that such negligence of the driver of the truck proximately caused the death of the intestate while he was attempting to cross to the west side of the road. Thus, the trial judge properly left to the decision of the jury the question of the actionable negligence of the operator of the defendant's truck. *Morgan v. Coach Co.*, 228 N. C. 280, 45 S. E. (2) 339; *Smith v. Miller*, 209 N. C. 170, 183 S. E. 370.

The same observation applies to the question of whether the plaintiff's intestate was guilty of contributory negligence. Under the pertinent decisions, this was a question of fact to be answered by the jury in the light of the intelligence, age, and capacity of the intestate. *Morgan v. Coach Co., supra; Manheim v. Taxi Corp.*, 214 N. C. 689, 200 S. E. 382; *Leach v. Varley*, 211 N. C. 207, 189 S. E. 636.

The charge is free from error. Indeed, the court declared and explained the law of the case with highly commendable accuracy and clarity.

In closing, we deem it not amiss to quote these words of caution to motorists from a decision of the Supreme Court of Pennsylvania: "Children are capricious. They act heedlessly without giving the slightest warning of their intentions. They dart here and there with the exuberance of youth. No law or edict of court will stop them; we shall not attempt to do so, but rather warn those who may meet them to be on the lookout." *Frank v. Cohen*, 288 Pa. 221, 135 A. 624

Because we find in law no error, the judgment of the Superior Court is affirmed.

No error.